BOEHM, Justice,
dissenting in part.
I agree with the majority that the statute of limitations bars much of Auto-Owners’s claim against Bank One. I also agree that the principal issues presented by Auto-Owners’s claim under the Uniform Commercial Code are (1) whether the bank failed to exercise ordinary care in accepting Wulfs checks, and (2) if so, the extent to which that failure contributed to AutoOwners’s loss. I do not agree that Bank One is entitled to summary judgment because I believe both questions present issues of fact that are not resolvable on summary judgment.
Section 405(b) of the UCC, quoted by the majority, provides that if an employee (here Wulf) is entrusted by the employer (Auto-Owners) with a check payable to the employer and wrongly endorses the check, the endorsement is as good as the employer’s as far as a taker in good faith (Bank One) is concerned. But the section goes on to provide that if a bank “fails to exercise ordinary care in paying or taking” the check, and that failure “substantially contributes” to the loss from the employee’s fraud, the employer can recover from the bank “to the extent that” the bank’s failure “substantially contributed” to the loss.
I believe the facts relevant to the bank’s exercise of ordinary care are easily stated, and present an issue for trial. Wulf, an employee of Auto-Owners, opened an account in the name of Auto-Owners Insurance. The designated evidence does not include any documentation of the opening of the account, and the exact nature of the account is not clear from this record. But under any view of this evidence, the account was not owned by an insurance company.[1] The tax identification number obtained for the account was Wulfs social security number, rather than a number *1093 appropriate for a business entity. More importantly, opening a bank account for a legal entity, such as a business corporation or insurance company, ordinarily requires proof of identity and authority in the form of tax identification numbers and corporate resolutions. See 2 James J. "White & Robert S. Summers, Uniform Commercial Code § 19-4(h) (4th ed.1995). Auto-Owners provided an affidavit from an experienced bank officer to the effect that the prevailing standard for opening a business cheeking account requires proof of identity and authority. Given the lack of corporate documentation, from Bank One’s point of view, the only owner the account could have was Wulf himself, as an individual perhaps using “Auto-Owners Insurance” as his assumed business name. I assume such a name could be used by an insurance agency operated as a sole proprietorship. Ind.Code § 27-1-15.6-10 (2004) (permitting use of assumed names by licensed sellers of insurance if the Commissioner is notified). If so, Auto-Owners designated evidence that it was Bank One’s practice, and the practice throughout the industry, to obtain an assumed business name certificate to open such an account. All of this adds up to a genuine issue of material fact as to the bank’s exercise of ordinary care in opening the account.
I disagree with the majority’s conclusion that the bank’s failure to exercise ordinary care can be confined to opening the account. When it came time to deposit checks into this account, Wulf showed up with checks payable to “Auto-Owners Insurance Company” and similar names. That payee would ordinarily be.taken to be an insurance company, most of which are organized as corporations.[2] Thus, it seems to me to present at least a jury question whether acceptance of such a check deposited into an individual’s account with no authorizing documentation whatever constitutes failure to exercise “ordinary care” as that term is used in section 405(b). The majority suggests that actions in opening the account cannot support recovery under section 405 because that section applies only to “paying” or “taking” an instrument (in this case the checks). But the two cannot be separated. In simple terms, after the account was opened, the bank accepted checks payable to Auto-Owners for deposit into Wulfs personal account, which permitted Wulf to write checks on the account. The initial alleged oversight was in opening an account for an individual under the “Auto-Owners Insurance” name, without either corporate authorization or an assumed business name certificate. But the bank then proceeded to accept checks payable to an insurance company— a corporate entity — for deposit into an account that was established for an individual under a similar but different name.[3] *1094 Whether acceptance of some or all of these deposits also constituted failure to exercise ordinary care is not resolvable on the evidence in this record.
The majority points out that comment 4 to section 405 describes a deposit into an individual account of a large check payable to a well-known corporation as a possible failure of ordinary care. First, it seems clear that this comment recognizes that the circumstances of opening an account may be relevant to whether ordinary care is exercised in subsequently accepting deposits into the account. Moreover, I think the majority reads comment 4 far too restrictively. It is an example, not an attempt to set the bounds of section 405. The point of the example is that discrepancies between the payee, the endorsement, and the type of account can create an ordinary care question. For example, anyone reading the name of the payee on a check payable to General Motors Corporation and endorsed by “General Motors” would wonder why it is being deposited in an individual account. This does not depend on the amount of the check, though I assume the $10,000 checks Wulf deposited were “large” in the context of most individual accounts. Nor does it depend on the prominence of the payee. If the check in any amount were payable to “General Widget Corporation” and endorsed by “General Widget,” I would think a jury could find failure to exercise ordinary care if a bank concluded without further investigation that the account was owned by a military officer whose surname was Widget. Here we have acceptance of checks payable to an insurance company, endorsed by a variant of the company’s name, and deposited into an individual account created with none of the paperwork associated with a corporate account or an assumed business name.
The majority suggests that any requirements for opening an account in a corporate name are for the benefit of the bank, not the general public. But it is plain that section 405 contemplates liability of the bank for “failure to exercise ordinary care” in accepting an endorsement. I.C. § 26-1-3.1-405 cmt. 1 (“If the bank failed to exercise ordinary care, subsection (b) allows the employer to shift loss to the bank to the extent the bank’s failure to exercise ordinary care contributed to the loss.”); White & Summers, supra, § 19 — 3(f) (describing possible failures to exercise ordinary care in accepting an endorsement). I see no reason why ordinary banking procedures are not evidence relevant to that determination. As White and Summers explain
Comment 4 deals with cases in which the prevailing standard is to investigate or at least to get some evidence from the person seeking to open the account that the principal exists and that the person opening the account is an authorized agent. If the bank fails to comply with the prevailing standard, failure to collect the necessary information may itself be held to be negligence that contributes to the loss.
Id. § 19 — 4(h).
I disagree with the majority’s view of the “substantial contribution” issue in two respects. First, the majority cites Auto-Owners’s substantial contribution to its own losses as a ground for granting summary judgment to the bank. Slip op. at 7-8. Assuming the majority is correct that the designated evidence establishes that Auto-Owners contributed substantially to the loss, that does not warrant summary *1095 judgment for the bank. Section 405 sets up a “pure” comparative negligence exercise. In such a regime, the plaintiffs negligence proportionally reduces, but does not eliminate, the right to recover, even if the plaintiffs negligence is greater than the defendant’s. Arthur Best, Impediments to Reasonable Tort Reform: Lessons from the Adoption of Comparative Negligence, 40 Ind. L.Rev. 1-2 nn. 4-5 (2007) (citing Restatement (Third) of Torts: Apportionment of Liability § 7 cmt. a (2000)). Section 405 contains no provision comparable to Indiana’s Comparative Fault statute, I.C. § 34-51-2-6, which bars recovery by a plaintiff who is greater than fifty percent at fault. Without language modifying pure comparative negligence, “to the extent that” means just that, so section 405 permits recovery proportionate to the defendant’s contribution to the loss, regardless of its size. It seems clear to me that the bank’s acceptance of these many checks over a period of years substantially contributed to Auto-Owners’s loss. The “extent” of that contribution compared to the lack of oversight attributable to Auto-Owners is a jury question not resolvable on summary judgment. See White & Summers, supra, § 19 — 3(d) (describing the comparative fault provisions as “an invitation for a plaintiff to roll the dice with the jury”).
DICKSON, J., concurs.

. If there ever was any documentation surrounding the opening of the account, Bank One says it is no longer locatable. Wulf testified that he was not asked to provide any documentation. Specifically, he said he supplied no articles of incorporation or board resolution. Wulf also testified that no one asked about his "type of business” or the "type of account” or whether the account was corporate or personal. Wulf testified that he opened the account in the name of "Auto-Owners, Kenneth B. Wulf.” Bank statements were mailed to "Auto Owners Insurance,” without mention of Wulf, at a post office box. *1093 The deposit slips and checks in the designated evidence show the account name as “Auto-Owners Insurance” with “Kenneth B. Wulf” on a second line. This seems to me to suggest either a joint account between two entities or an individual account owned by Wulf using an assumed business name. A bank officer testified that the account holder chooses the names printed on these checks and deposit slips.

. The name of an Indiana insurance company must include "insurance” and either "company,” "incorporated,” "corporation,” or an abbreviation of one of these terms. Id. § 27-1-6-3. Foreign insurers are exempt from this requirement, provided that the name is authorized by the state in which the foreign insurance company is organized and the name does not “negate the characteristic of such company as an insurance company.” Id. § 27-1-17-3.

. Auto-Owners supplied an affidavit from an experienced bank officer stating that the existing commercial practice for sole proprietorship accounts was to list first the name of the individual, in this case, Wulf. In this case, the first name on the account was "Auto-Owners Insurance.” The affidavit also states that ex *1094 isting commercial practices prohibit the deposit of a corporate check into a noncorpo-rate account.